UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| MARIE DUMAS, | Case No. 6:23-cv-01300-MK |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| STATE FARM FIRE AND CASUALTY COMPANY, | |
| Defendant. | |

**KASUBHAI,** United States District Judge:

Plaintiff Marie Dumas ("Plaintiff") brings this claim against Defendant State Farm Fire and Casualty Company ("Defendant") for breach of her insurance contract. First Am. Compl. ("FAC") 3, ECF No. 10. Defendant raises the affirmative defense that Plaintiff's concealment, misrepresentation, or fraud voided the contract ("Misrepresentation Defense"). Answer First Am. Compl. 3-4, ECF No. 13. Plaintiff moves for partial summary judgment against the Misrepresentation Defense. For the reasons below, Plaintiff's Motion for Partial Summary Judgment (ECF No. 29) is denied.

## BACKGROUND

**I.  The Fire**

On January 26, 2022, a fire severely damaged Plaintiff's home. Sturm Decl. Ex. 1 ("File Notes") 122, ECF No. 30. Plaintiff escaped the fire but was hospitalized. File Notes 122.

Page 1 — OPINION AND ORDER

Plaintiff, at the scene and later at the hospital, told a fire marshal that the fire was caused by a candle she had left lit near takeout papers and boxes while she slept in her office. Sturm Decl. Ex. 5 at 28-31. Plaintiff's insurance agent submitted a claim on her behalf and under her insurance policy with Defendant to cover the loss. File Notes 122.

On the date of the fire, Defendant noted Plaintiff's financial circumstances and history of family tragedy indicated potential fraud and referred the claim to its Special Investigation Unit for review. File Notes 121; Sturm Decl. Ex. 2 ("Ostrom Dep.") 12:1-16. According to its standard practice in large loss fires, Defendant retained an independent investigator to examine the cause and origin of the fire. Ostrom Dep. 9:17-20. Plaintiff told the investigator, like she told the fire marshal, that the fire started from the candle. Sime Decl. Ex. 105 "Pl. Dep. II" 231:7-8, ECF No. 34.

## II. Defendant's Investigation of the Claim and Payments Under the Policy

On January 28, 2022, Defendant authorized a $5,000 advance to cover her hospital bills and short-term needs. File Notes 114; Ostrom Dep. 20:5-16. By February 2, Defendant knew that Plaintiff faced foreclosure, owed back-taxes, and may have had mental health issues. File Notes 119-20, 115-16, 110. Citing financial motives, Defendant had concern Plaintiff may have intentionally burned her home. Sturm Decl. Ex. 3 ("Strobl Dep.") 10:5-22, Ex. 4. By mid-February, Defendant sought an examination of Plaintiff under oath. File Notes 91. On February 17, Defendant approved lodging for Plaintiff at a hotel and extended Plaintiff's additional living expenses during its investigation into the fire. File Notes 88. On February 18, 2022, Plaintiff's counsel responded to the request for the examination via letter, stating that Plaintiff would attend the examination. Sturm Decl. Ex. 6 at 1. The letter further stated that Plaintiff wanted to clarify the cause of the fire and that "[t]he fire was caused by the use of a butane torch to kill flies in

[Plaintiff's] office. While using the butane torch, [she] inadvertently ignited trash in her office." Sturm Decl. Ex. 6 at 1.

On February 23, 2022, Defendant authorized a second advance in the amount of $5,000. File Notes 86. On February 25, 2022, Defendant authorized payments to TempHome Services for rental housing for Plaintiff after she had to leave her hotel. File Notes 83-84. Defendant examined Plaintiff under oath on March 3 and 10, 2022. Sime Decl. ¶¶ 2, 3. Under oath, Plaintiff admitted her initial statements that the candle started the fire were not truthful. Pl. Dep. II 231:1-6. She further stated that "the fire was an accident," and it started when she attempted to burn flies with a butane torch, igniting takeout boxes and wrappers. Sime Decl. Ex. 104 ("Pl. Dep. I") 98:8-99:1; Pl. Dep. II 245:10-21. A week after the examination under oath, the independent investigator informed Defendant that some of the samples from the scene of the fire tested "hot/positive" for "ISO paraphenic [sic] solvents." File Notes 69. Defendant requested further testing from other locations at the scene and a full report to see if the solvents could be found in takeout boxes and wrappers. File Notes 66, 69.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

After Defendant's examination under oath, Defendant made the following additional living expense payments to TempHome Services for Plaintiff's housing:

| Issued Date | Amount |
| --- | --- |
| 3/11/2022 | $5,621.50 |
| 4/5/2022 | $7,382.60 |
| 4/5/2022 | $7,382.60 |
| 4/5/2022 | $10,300.23 |
| 6/16/2022 | $5,867.84 |
| 6/16/2022 | $1,690.32 |
| 6/24/2022 | $2,133.76 |
| 7/20/2022 | $7,769.00 |
| 8/12/2022 | $6,169.00 |
| 9/16/2022 | $5,970.00 |
| 10/7/2022 | $6,169.00 |
| 11/21/2022 | $1,393.00 |

Strobl Decl. Ex. 101 at 9-10, ECF No. 33.

### III. Defendant's Denial of Plaintiff's Claim

On September 9, 2022, Defendant received the fire investigator's full report which stated that samples from the scene of fire "indicated the presence of a midrange petroleum distillate in the room of origin at widely separated locations." File Notes 32; Sturm Decl. Ex. 5 at 9-10. The investigator opined that "the fire was the result of the intentional distribution of a midrange petroleum distillate" ignited by a handheld flame. Sturm Decl. Ex. 5 at 10. On or near October 28, 2022, Defendant denied Plaintiff's claim via letter stating the following:

> Based on our investigation, the applicable provisions of the policy contract and the law, we have concluded there is no coverage for [Plaintiff's] claim. The evidence clearly shows that [Plaintiff] intentionally set the home on fire, provided false and misleading information in the presentation of the claim that was material to our investigation and relied upon.
>
> . . . .
>
> The evidence indicates that the statements and representations [Plaintiff] made regarding the cause of the fire and her actions leading up to the fire were misleading and false. . . . Contradictions were identified between [Plaintiff's] statements and evidence gathered during the investigation of the claim such as the identification of multiple locations of a flammable liquid with the room of origin of the fire.

> Because the loss is not accidental and was intentionally set by [Plaintiff], and her intentional breach of the policy, [Plaintiff's] claim is denied.

Sturm Decl. Ex. 9 ("Denial Letter") 1, 4. The letter further cited provisions of the insurance policy, including the provision giving rise to the Misrepresentation Defense:

> **2.     Concealment, Misrepresentation, or Fraud**
>
> . . . .
>
> b.   In order to use any representation made by *you* or on *your* behalf in defense of a claim under the policy, *we* must show that the representations are material and that *we* relied on them.
>
> c.   . . . this entire policy will be void:
>
> (1)   if, whether before or after a loss, *you* have willfully concealed or misrepresented any material fact or circumstance concerning:
>
> (a)   this insurance or the subject of it; or
>
> (b)   *your* interest it in it; or
>
> (2)   in the case of any false swearing by *you* relating to this insurance.

Denial Letter 3.

Plaintiff alleges that denying the claim breached the insurance contract. FAC ¶ 17.

## STANDARDS

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file, if any, show "that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law on an issue determines the materiality of a fact. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of the dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the

absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324.

Special rules of construction apply when evaluating a summary judgment motion: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *T.W. Elec.*, 809 F.2d at 630-31.

## DISCUSSION

Defendant alleged that Plaintiff made twenty-seven separate material misrepresentations in its Response to Plaintiff's First Set of Interrogatories. Sturm Decl. Ex. 10 at 2-7. For purposes of this motion, Defendant relies on two alleged misrepresentations: Plaintiff's statements (1) that the fire started when she used a handheld torch to kill flies, igniting paper and takeout boxes that were on the floor and (2) that "the fire was an accident" and "[she] did not intentionally start the fire." *See* Pl. Dep. I 98:8-99:1; Pl. Dep. II 245:10-21. Defendant alleges that it relied on these misrepresentations to its detriment, voiding Plaintiff's insurance policy under the Misrepresentation Defense. Plaintiff moves for summary judgment against the Misrepresentation Defense arguing (1) Defendant cannot show detrimental reliance on the misrepresentations, and (2) Defendant waived the defense through its conduct.

**I.    The Misrepresentation Defense**

Oregon law requires a fire insurance policy to contain a provision that voids the entire policy if "the insured has willfully concealed or misrepresented any material fact" and the "insurer relied on [the misrepresentation]." ORS § 742.208.[1] Plaintiff only argues that Defendant

---

[1] Neither party contends that the policy at issue here deviates from the required statutory language. *See* Gower Decl. II Ex. 1 at 49, ECF No. 36.

cannot show the element of reliance. To show reliance, the insurer must show "evidence of a detrimental action or change in position" such as incurring additional expenses because of the insured's misrepresentations. *Eslamizar v. Am. States Ins. Co.*, 134 Or. App. 138, 146 (1995). The insurer must show that it "has acted or refrained from acting to [its] detriment." *Allstate Ins. Co. v. Breeden*, 216 F. App'x 655, 659 (9th. Cir. 2007) (quoting *Eslamizar*, 134 Or. App. at 143). General assertions "that the insurer relied on an insured to ascertain a loss" do not establish reliance. *Masood v. Safeco Ins. Co. of Oregon*, 275 Or. App. 315, 332 (2015). An insurer may not establish detrimental reliance when it merely fulfills a duty to investigate claims. *Breeden*, 216 F. App'x at 659-60. An insurer may establish detrimental reliance, however, by presenting evidence that it "paid . . . more than it otherwise would have without [a] plaintiff's misrepresentation[]." *Masood*, 275 Or. App. at 335; *cf. Degon v. USAA Casualty Ins. Co.*, 511 F. Supp. 3d 1144, 1153 (D. Or. 2021) (distinguishing "conclusory assertions of . . . declarants" from concrete quantifications of additional costs).

  The defense often arises in the context of an insured's misrepresentations about the value of their insurance claim. *See, e.g.*, *Masood*, 275 Or. App. at 333 (value of chandeliers, cabinets, and audio equipment); *Degon*, 511 F. Supp. 3d at 1151 (ownership of watch); *Breeden*, 216 F. App'x at 659 (value of furniture). Courts in this District have also assessed the misrepresentation defense where the insurer allegedly misrepresented the cause of the fire. *E.g.*, Stephen v. Country Mut. Ins. Co., No. 3:14-cv-01345, 2017 WL 555992, at *2 (D. Or. Feb. 10, 2017). The insurer in *Stephen* offered the declaration of its investigator which stated that the misrepresentations caused it to "retain[] multiple experts," incurring $321,000 in expert fees and "additional costs and expenses above a normal claim investigation." *Id.* at *5. The Court found this evidence insufficient to show detrimental reliance because defendant did not produce "any evidence to

such costs in a 'typical' fire claim." *Id.* at *6. In other words, the defendant failed to show that the expert and investigation costs exceeded those that would have been incurred without the alleged misrepresentation. *Id.*

### A.     Detrimental Reliance

Plaintiff argues that Defendant fails to show any change in its position through reliance on Plaintiff's alleged misrepresentations. Defendant's initial investigative costs, expert costs, and standard advances were not incurred *because of* the alleged misrepresentations; these costs stem from Defendant's general practices, course of investigation, and inquiry into Plaintiff's statements about the fire. *E.g.*, Ostrom Dep. 20:24-21:14 (issuing an ADA advance is "standard ops"), 9:17-20 (retaining an independent investigator on large fires is "standard ops"), 12:6-10 (referring claims to investigative units is done when there are indicators of fraud); Strobl Dep. 64:3-10 (extending additional living expenses benefits to a policy holder during an investigation is typical). These costs are therefore insufficient to show reliance under Oregon law.

Defendant's claim manager also stated that if Plaintiff would have admitted she intentionally started the fire "[it] would have avoided many of the investigation costs, expert costs and legal fees incurred after the examination under oath." Strobl Decl. ¶ 10. These conclusory statements are insufficient to establish detrimental reliance under Oregon law, and Defendant's interrogatory responses do not adequately link these costs to the specific misrepresentation. Sturm Decl. Ex. 10 at 7-10. This evidence does not show detrimental reliance because Defendant does not establish any comparative analysis as to how it incurred investigative and expert expenses above those incurred in "a typical investigation of claims." *Breeden*, 216 F. App'x at 660.

Defendant, however, also paid additional living expenses after Plaintiff made the alleged misrepresentations. Defendant's case manager stated that if Plaintiff had not made the

Page 8 — OPINION AND ORDER

misrepresentations, Defendant would have stopped its investigation, cancelled Plaintiff's policy within sixty days of March 10, 2022, and avoided further additional living expenses. Strobl Decl. ¶ 9. Defendant offers invoices quantifying the expenses it paid sixty days after Plaintiff's examination under oath. Strobl Decl. ¶¶ 11, 12, Ex. 103. Defendant made five additional living expense payments, totaling more than twenty-three thousand dollars, before it received its expert's investigative report and seven payments, totaling more than thirty-five thousand dollars, before it denied Plaintiff's claim. Strobl Decl. ¶ 11, Ex. 103. Defendant repeatedly stated that it would continue additional living expense payments to Plaintiff during its investigation in its claim notes. File Notes 87-88 (February 17, 2022), 61-62 (March 29, 2022), 52 (May 10, 2022). These statements, made during Defendant's investigation, are further evidence that Defendant would have avoided incurring further expenses if its investigation ended earlier. The evidence of additional living expenses Defendant paid here are therefore more concrete and quantified than conclusory statements of increased costs.

     Plaintiff argues that Defendant's evidence, like that of the insurer in *Stephen*, is insufficient to show reliance because it does not establish that any costs incurred by Defendant were abnormally high relative to a typical claim. The insurer in *Stephen* alleged that the misrepresentation caused it to act to its detriment by more thoroughly investigating the insured's claims. In contrast, Defendant here argues the misrepresentations caused it to refrain from denying Plaintiff's claim sooner. As a result, Defendant need not show that its additional living expense payments were beyond those in a typical case; Defendant does not just allege that the misrepresentations caused it to incur higher investigative costs than it normally would but rather that the misrepresentations prevented it from terminating additional living expense payments it would not have made but for Plaintiff's alleged misrepresentation.

Page 9 — OPINION AND ORDER

Although Plaintiff points to evidence that additional living expenses are incurred by standard practice, Defendant's declarations, claim notes, and invoices are evidence that it incurred additional living expense costs because of the misrepresentations. Drawing all inferences arising from the facts in the light most favorable to Defendant, there is a genuine issue of material fact as to whether Defendant detrimentally relied on the alleged misrepresentations.

    **B.**    **Justified Reliance**

Reliance must also be reasonable or justified, considering the "totality of the parties' circumstances and conduct" and "whether the party claiming reliance took 'reasonable precautions to safeguard his or her own interests.'" *Masood*, 275 Or. App at 332 (quoting *Vukanovich v. Kine*, 268 Or. App. 623, 635 (2015), *adhered to as modified on recons.*, 271 Or. App 133). The inquiry "turns on the nature of the person's relationship with the person making the alleged misrepresentation, and that person's experience and sophistication with the type of transaction at issue, as well as with the subject matter of the misrepresentation." *Id.* (quoting *Vukanovich*, 268 Or. App. at 635).

Plaintiff argues that Defendant's reliance was not justified or reasonable because it immediately suspected Plaintiff had started the fire. The record shows that Defendant identified potential fraud through indicators of financial stress almost immediately after the fire. Defendant investigated Plaintiff's claim, referring the claim to its special investigative unit and retaining an independent investigator. After Plaintiff sought to clarify that the fire resulted from her use of a butane torch and not from a candle that she left lit, Defendant sought an examination under oath. Plaintiff, under oath and represented by counsel, stated that the fire cause was accidental on March 3 and 10, 2022. Defendant did not receive the report from its expert concluding that fire was intentionally caused until September 9, 2022. File Notes 32; Sturm Decl. ¶ 6, Ex. 5 at 10. Defendant incurred additional living expense costs between March 10 and September 9, 2022.

Plaintiff relies on *Degon* to argue that reliance on an insured's statements is unjustified as a matter of law if an insurer suspects inaccuracy. While the *Degon* court noted that the "Defendant was suspicious of Plaintiff's claims from the beginning," it found no evidence of detrimental action. 511 F. Supp. 3d at 1153 (explicitly not reaching the other elements of the misrepresentation defense); *see also Chaney v. Fields Chevrolet Co.*, 258 Or. 606, 612 (1971) (finding no reliance where the party always suspected a claim was inaccurate, did not rely on it, and did not pay it). Here, Defendant has put forth evidence that it incurred additional costs that it would have avoided in the absence of Plaintiff's alleged misrepresentation. Further, although Defendant was suspicious of Plaintiff's statements well before it incurred those costs, the evidence could support a jury finding that Defendant took reasonable steps to safeguard its interests; it retained an independent fire investigator and examined Plaintiff under oath. Considering that the misrepresentation was made (1) before Defendant received the report from its independent expert, (2) under oath, a setting indicative of veracity, and (3) with the representation of counsel, a jury must decide whether Defendant's reliance was reasonable or justified.

## II.     Waiver

After Defendant denied Plaintiff's claim, a landlord at one property where Plaintiff stayed during the fire investigation brought a breach of contract and negligence claim against Plaintiff. Gower Decl. I ¶ 3, Ex. 1 at 10, 11, ECF No. 31. The claim alleged that Plaintiff failed to maintain the property during her stay from mid-March 2022, until May 2022. Gower Decl. I ¶ 3, Ex. 1 ¶¶ 14, 25. Defendant tendered defense and indemnity of Plaintiff for the landlord's claim, citing Plaintiff's insurance policy. Gower Decl. I ¶ 5, Ex. 2. Plaintiff alleges that this conduct waived Defendant's Misrepresentation Defense.

"Waiver is the intentional relinquishment or abandonment of a known right or privilege." *Moore v. Mut. of Enumclaw Ins. Co.*, 317 Or. 235, 240 (1993). An insurer may generally waive a contract provision through "[c]onduct . . . after a loss has occurred that is inconsistent with a particular defense, especially where the insured has been . . . led to believe there is coverage." *Wright v. State Farm Mut. Auto. Ins. Co.*, 223 Or. App. 357, 369 (2008) (citation omitted). "Whether a waiver has occurred depends on the particular circumstances of each case." *Moore*, 317 Or. at 240. In the context of fire insurance, waiver of any provision must be in writing. *Id.* at 243; ORS § 742.222.

Like ORS § 742.222, the policy here provides that any waiver must be in writing. Gower Decl. II Ex. 1 at 181, ECF No. 36. Plaintiff fails to identify any purported written waiver. In fact, the record shows that Defendant explicitly reserved its defenses in written communications with Plaintiff. *E.g.*, Sturm Decl. Ex. 4 at 1 (February 4, 2022), Ex. 7 at 1 (March 18, 2022), Ex. 8 at 1 (August 17, 2022), Denial Letter at 4 (October 28, 2022); Gower Decl. I Ex. 2 at 2 (March 3, 2023). Regardless, settling the claim against Plaintiff does not establish Defendant's intent to relinquish the Misrepresentation Defense in light of Defendant's repeated written statements. Plaintiff's alleged actions that gave rise to the lawsuit occurred before Defendant denied her claim, and Defendant had reasonable concern that it needed to defend Plaintiff under her policy. *See* Gower Decl. I Ex. 2; Gower Decl. II Ex. 1 at 27, 42-44 (setting forth coverage to defend similar claims). Finally, the record does not establish that Defendant led Plaintiff to believe there was coverage as a matter of law. Defendant examined Plaintiff under oath regarding prior misrepresentations and explicitly denied her claim before representing her in the landlord's suit. Plaintiff therefore has not shown Defendant waived the Misrepresentation Defense as a matter of law.

## CONCLUSION

For the reasons discussed above, Plaintiff's Motion for Partial Summary Judgment (ECF No. 29) is DENIED.

DATED this <u>20th</u> day of January 2026.

<u>s/ Mustafa T. Kasubhai</u><br>
MUSTAFA T. KASUBHAI (he/him)<br>
United States District Judge